**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CARLA RANSOM,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 11 C 7979 |
| **LEVY SECURITY CORP.,** | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Carla Ransom, a forty-four-year-old African-American woman, has sued her former employer, Levy Security Corporation, alleging retaliation for complaining about discrimination and for filing worker's compensation claims. Levy has moved for summary judgment. In considering the motion, the Court views the record in the light most favorable to Ransom and draws reasonable inferences in her favor. *See, e.g., Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010).

Ransom worked for Levy as a public safety officer starting in 2005. She suffered two knee injuries on the job and went on medical leave beginning July 2008. She also filed two worker's compensation claims. Ransom was cleared to return to work in January 2009 with certain restrictions. These restrictions remained in place throughout the remainder of her employment.

After she returned to work, Ransom filed a number of grievances as a result of a number of workplace incidents, several of which she contended amounted to

discriminatory treatment. In July 2009, Ransom filed a charge with the EEOC, claiming discrimination based on race, sex, age, and disability.

Ransom contends that in retaliation for her worker's compensation claim and her grievances and EEOC charge, Levy directed her to undergo a fitness-for-duty evaluation in September 2009. Ransom says, and a reasonable jury could find, that she complied with Levy's directions and was given a positive fitness evaluation. Levy rejected this evaluation and directed another evaluation by a psychologist of its choosing. A reasonable jury could find that this was a departure from Levy's usual practice. The psychologist concluded that Ransom was unfit for duty. As a result, Levy put Ransom on unpaid FMLA leave pending a third evaluation.

Ransom then obtained an evaluation by a psychiatrist, who concluded that she was "stable" and did not present a danger to herself or others. Levy rejected this conclusion and directed an evaluation by a psychologist whom it had chosen. This psychologist found Ransom unfit for duty. On December 22, 2009, Ransom's FMLA leave expired, and Levy terminated her employment.

## Discussion

### A. Federal retaliation claims

Ransom alleges that she suffered adverse employment actions when she was required to undergo fitness-for-duty examinations; placed on involuntary, unpaid leave; and terminated. Levy argues that the first two of these are not actionable. A plaintiff in a retaliation case must show that a reasonable employee would have found the challenged action is such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern Santa Fe Ry. Co.*

2

*v. White*, 548 U.S. 53, 68 (2006). Viewing the evidence in the light most favorable to Ransom, a jury reasonably could find that a reasonable employee might be dissuaded from complaining about discrimination by the threat of being forced into a mental health evaluation as well as by what amounts to an extended suspension without pay. *See, e.g., Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012) (forced unpaid leave of absence constitutes adverse action).

      Levy also challenges Ransom's ability to prove a causal connection between her complaints and the claimed adverse actions. There is sufficient direct (including circumstantial) evidence of retaliation to permit a reasonable jury to find causation. But Levy's summary judgment memorandum contains a virtual admission that it imposed the fitness for duty requirement because of Levy's grievances, at least some of which alleged discrimination. Specifically, Levy says that Ransom engaged in "erratic behavior [that] included filing numerous grievances and complaints . . ., including two sexual harassment claims" and that "[a]s a result of her erratic and threatening behavior, [Ransom] was asked to take a fitness for duty evaluation." Def.'s Mem. at 2. This same connection is drawn in the "to whom it may concern" memo that Levy sent to Ransom as part of the direction to undergo a fitness examination. In short, Levy itself indicates a connection between Ransom's complaints and the requirement to undergo a fitness for duty exam. To be sure, Levy claims this was entirely justified based on factors other than legitimate complaints by Ransom about prohibited discrimination, but that involves genuinely disputed fact issues that a jury must decide.

      A reasonable jury could find that the fitness for duty exam requirement led inexorably to Ransom's termination and that this is what Levy intended. In particular, a

3

reasonable jury could find that Levy rigged the exam requirement by changing the rules after the fact, to make sure that it came up with a basis to terminate Ransom. More specifically, a reasonable jury could find that Ransom's first evaluator, chosen in the manner Levy directed and in accordance with its written policies, deemed her fit for duty, but that Levy, in a variation from those same policies, required a second evaluation. Levy says this because the first evaluator, Phillips, was not a psychologist and did not unequivocally state that Ransom was fit for duty. But Levy's letter to Ransom directing her to undergo a fitness evaluation did not require her to see a psychologist but instead required only that she see a "mental health specialist of her choice," which is what Phillips was. And a reasonable jury could conclude that Phillips' statement that Ransom's "prognosis to return to work appears favorable" meant that she was fit for duty and that by requiring a second examination, Levy made it clear that it was going to keep trying until it got a finding of unfitness. Levy can explain all of this with evidence a reasonable jury might well accept, but on summary judgment, inferences are drawn in in Ransom's favor, and a jury reasonably could find for Ransom on her federal retaliation claims.

**B.    Workers' compensation retaliation claim**

The Court reaches a different conclusion regarding Ransom's claim that Levy terminated her because she filed workers' compensation claims. To prevail on this claim, Ransom must show that: she was employed by Levy before being injured; she exercised a right under the IWCA; and her discharge was causally connected to the exercise of her right. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012).

Ransom relies on the same circumstantial evidence for this retaliation claim as

4

she did for her federal retaliation claims. But unlike those claims, there is no direct or even circumstantial evidence of a causal connection between Ransom's filing or prosecution of worker's compensation claims and the adverse action that Levy took against her. To be more specific, although there is evidence suggestive of a causal connection between Ransom's complaints about discrimination and the fitness-for-duty examination and Levy's ensuing actions, there is no evidence from which a reasonable jury could find such a connection with her earlier filing of worker's compensation claims. And assuming, for purposes of discussion, that the indirect, burden-shifting approach applies to a common law retaliation claim, Ransom has offered no evidence of any other employees who did not file worker's compensation claims, were otherwise similarly situated to Ransom, but were treated better. Levy is entitled to summary judgment on this claim.

## Conclusion

For the foregoing reasons, the Court grants Levy's motion for summary judgment [docket no. 26] as to count 4 of plaintiff's complaint but denies the motion as to counts 1, 2, and 3. A status hearing is set for June 25, 2013 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 17, 2013